Matthew R. Mendelsohn
David A. Mazie (*pro hac vice* forthcoming)
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898

Joseph G. Sauder (*pro hac vice* forthcoming)
Matthew D. Schelkopf (*pro hac vice* forthcoming)
Benjamin F. Johns (*pro hac vice* forthcoming)
Joseph B. Kenney (*pro hac vice* forthcoming)
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 W. Lancaster Avenue
Haverford, PA 19041
(610) 642-8500



*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAWRENCE SASSO on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> HIKO ENERGY, LLC, <br><br> Defendant. | Civil Action No. <br><br> **CLASS ACTION COMPLAINT AND JURY DEMAND** |

### PLAINTIFF'S CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Lawrence Sasso brings this action against Hiko Energy, LLC ("Hiko"), by and through his attorneys, individually and on behalf of all others similarly situated, and alleges with personal knowledge as to his own actions, and upon information and belief as to those of others, as follows:

## SUMMARY OF CLAIMS

1. This case involves a classic bait-and-switch scheme. Hiko markets its electricity supply by representing to consumers that they will enjoy guaranteed savings as compared to local utilities' rates, and that they offer a competitive market rate.

2. Unfortunately for consumers, the representation that Hiko customers enjoy savings is a lie. In fact, Defendant's rates are substantially higher than prevailing rates charged by local utilities and other independent energy supply companies ("ESCOs"). As a result, customers who switched to Defendant are being forced to pay energy rates that exceed the current market cost of energy by over 50%, and sometimes by as much as almost 300%.

3. Plaintiff brings this action to redress Defendant's violations of the New York General Business Law and the common law.

## THE PARTIES

4. Plaintiff Lawrence Sasso ("Plaintiff Sasso") is a resident of New Brunswick, New Jersey. Plaintiff received electricity and natural gas supply from Hiko beginning in January 2014.

5. Defendant Hiko Energy, LLC is a New York limited liability corporation with its principal place of business located at 12 College Road, Monsey, New York 10952-2821.

6. At all times relevant herein, Defendant was engaged in the business of marketing, advertising and selling energy services to consumers in New York and New Jersey.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action. This Court has personal jurisdiction over Defendant because it owns, operates, and/or controls business

operations, and/or does extensive business with others, in New York, and because Defendant is incorporated in this state.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant maintains its principal place of business and corporate headquarters in New York. Additionally, Defendant transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be citizens of this district. Moreover, Defendant has marketed and advertised its services in this district and has received substantial revenue and profits from its fraudulent practices in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

9. Venue is also proper in this judicial district because Hiko's customer agreements and terms and conditions for New York and New Jersey customers specify that venue for any action lies in New York.

## TOLLING OF STATUTES OF LIMITATION

10. Any applicable statute(s) of limitations has been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein. Plaintiff and the Class could not have reasonably discovered the fraudulent nature of Defendant's communications shortly after becoming Defendant's customers.

11. Defendant was and remains under a continuing duty to disclose to Plaintiff and the Class the true character, quality, and nature of the pricing for Hiko's services, that it does not offer a competitive market rate, and that consumers will not save any money by purchasing electricity and natural gas from Hiko but will instead be charged rates substantially higher than those offered by utilities and other ESCOs. As a result of Defendant's material

misrepresentations and/or active concealment, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

12. In the mid-1990s, the New York and New Jersey state governments implemented policies to deregulate the energy industry to help businesses and consumers save money on energy by relying on the free market to lower prices. As a result, ESCOs began competing with each other and utilities to sell energy to consumers.

13. Defendant began supplying energy to commercial and residential customers in New York in or around 2010 as a third party energy supplier. Shortly thereafter Defendant expanded to other states including New Jersey, Illinois, Pennsylvania, Connecticut, Ohio and Maryland.

14. Defendant's marketing materials and representatives guarantee consumers that if they switched to Hiko from their local utilities, they will enjoy guaranteed savings and be charged a competitive market rate.

15. For example, when customers sign up with Hiko, they receive a letter that informs them what rate they will be charged for electricity and/or natural gas. That letter promises:

> **Guaranteed Savings!** You have been enrolled onto a variable rate, which is guaranteed to be 1-7% less than your local Utility's price to compare, for the first six monthly billing cycles. After the six-month introductory rate plan, you will be automatically rolled over onto a competitive variable rate, which will be determined by HIKO Energy, based on numerous key factors, including current market conditions and climate. The variable rate can change regularly.

Attached as Exhibit 1 is the letter Mr. Sasso received.

16. A reasonable consumer who viewed any of Defendant's advertising materials would interpret such advertising materials to mean that switching to Hiko Energy would result in monthly energy savings and lower utility bills.

17. However, the representation that customers will enjoy guaranteed savings is false and misleading because Hiko charges its customers rates that are substantially higher than that of local utilities.

18. In late October 2013, Plaintiff Sasso switched from PSE&G to Hiko Energy based on Defendant's representations that its pricing would reduce his utility bill and guarantee him monthly savings as compared to PSE&G's energy rates.

19. On October 23, 2013, Elly Berstein, Hiko's Director of Operations, sent Plaintiff Sasso a letter stating that "[y]ou have been enrolled onto a variable rate, which is guaranteed to be 1-7% less than your local Utility's price to compare, for the first six monthly billing cycles." See Exhibit 1.

20. Plaintiff Sasso received his first monthly statement for January 2014 with Hiko as his third party supplier. In January 2014, Plaintiff Sasso's Hiko gas charge for the first floor of his home was $65.07, and PSE&G's price to compare was $30.87. Plaintiff Sasso's Hiko electric charge for the first floor of his home was $104.48, and PSE&G's price to compare was $96.33. For the second floor of his home, Plaintiff Sasso's Hiko gas and electric charges were $65.07 for gas and $19.87 for electric, and PSE&G's price to compare was $29.02 for gas and $18.32 for electric.

21. In February 2014, Plaintiff Sasso's Hiko gas charge for the first floor of his house was $106.93, and PSE&G's price to compare was $36.37. Plaintiff Sasso's Hiko electric charge for the first floor of his home was $292.72, and PSE&G's price to compare was $110.06.

For the second floor of his home, Plaintiff Sasso's gas and electric charges were $174.53 for gas and $78.34, and PSE&G's price to compare was $60.13 for gas and $29.46 for electric.

22. Hiko's representation that its rates are competitive and based on market conditions and climate are also false and misleading. In fact, local utilities' and other ESCO's rates that are based on market conditions are substantially lower than Hiko's.

23. Defendant's representations that consumers will save money and lower their utility bills are material, as price is the most important considerations for any reasonable consumer when selecting the supplier of a fungible service like energy. No reasonable consumer who had knowledge of Defendant's business practices would choose Hiko as his or her energy supplier.

24. Defendant's unlawful, false, deceptive and misleading advertising materials induced thousands of customers, including Plaintiff and the Class, to reasonably believe their energy prices would result in a reduction of energy costs compared with their local utility.

25. As a result of Defendant's false and misleading representations regarding the rate it will charge new customers, Plaintiff and other similarly situated New York and New Jersey consumers were injured because they were charged a rate by Hiko that was substantially higher than the rates charged by local utilities and other ESCOs whose rates are in fact competitive and based on market conditions.

26. But for Defendant's false and misleading representations regarding the rates it will charge new customers, Plaintiff and other similarly situated would not have switched to Hiko. In fact, the only reason any reasonable consumer switches to an ESCO like Hiko is for the chance to enjoy potential savings over the rates offered by utilities.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action individually, and on behalf of a class, pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3); specifically, the following Class: All New York and New Jersey persons or entities who are current or former natural gas and/or electric customers of Defendant. Excluded from the Class are Defendant, its affiliates, employees, officers and directors, and the Judge(s) assigned to this case. Plaintiff reserve the right to modify the Class definition if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

28.     <u>Numerosity</u>:  The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual Class Members are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, Plaintiff believe that thousands of class members have been fraudulently induced to switch to Hiko for their utility services.

29.     <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions or law and fact exist as to all Class Members. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

     a.     Whether Defendant's marketing materials were materially misleading.

     b.     Whether Defendant failed to disclose material information to Plaintiff and the Class.

     c.     Extent and measurement of classwide damages, and nature of other appropriate relief.

30.     <u>Typicality</u>: The claims of the representative Plaintiff are typical of the claims of

the Class in that the representative Plaintiff, like all Class Members, were deceptively induced to drop their current energy provider and switch to Defendant. The representative Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that they have incurred or will incur substantially higher utility bills then they otherwise would have had they remained with their current provider. Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread resulting in injury to all Class Members.

31. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer fraud class actions involving ESCOs, and Plaintiff intends to prosecute this action vigorously.

32. <u>Superiority</u>: Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

33. Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## VIOLATIONS ALLEGED

### COUNT I
### VIOLATION OF THE NEW YORK
### GENERAL BUSINESS LAW §349

34. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

35. Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Class against Defendant.

36. Through the conduct described above, Defendant has engaged in deceptive acts and practices that resulted in injury to Plaintiff and the other members of the Class.

37. Defendant's advertisements violated the N.Y. Gen. Bus. Law § 349 and N.Y. GEN. BUS. LAW §349-d because they contained materially misleading (and false) statements, and omitted material information.

38. As a result of Defendant's conduct, Plaintiff and Class members have suffered an ascertainable loss in the form of direct monetary losses.

39. A causal relationship exists between Defendant's unlawful, false, deceptive, and misleading conduct and the Plaintiff's and the putative Classes' injuries, including, but not limited to, Defendant's exorbitant and excessive energy rates that Plaintiff was charged. Had Defendant not engaged in the aforementioned deceptive conduct, Plaintiff and the putative Classes would not have switched to Defendant's energy services.

40. By reason of the foregoing, Defendant has violated N.Y. GEN. BUS. LAW §349, and should be enjoined from failing to disclose that its rates are substantially higher than those otherwise available by local utilities and misrepresenting that its rates are competitive. Defendant is also liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial but not less than $50.00 for each violation, such damages to be trebled, plus attorneys' fees.

41. Defendant's pattern of conduct was consumer-oriented, and was directed towards the public generally. Therefore, in addition to the foregoing damages, Plaintiff and the Class are entitled to punitive damages.

## COUNT II
## VIOLATION OF THE NEW YORK
## GENERAL BUSINESS LAW'S ENERGY SERVICES COMPANY
## CONSUMERS BILL OF RIGHTS, N.Y. GEN. BUS LAW §349-d

42. Plaintiff and the Class incorporate by reference each preceding and each succeeding paragraph as though fully set forth herein.

43. Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Class against Defendant.

44. N.Y. GEN BUS. LAW § 349-d(3) is entitled "Energy services company consumers bill of rights." It provides that "[n]o person who sells or offers for sale any energy services for, or on behalf of an [energy service company ("ESCO")] shall engage in any deceptive acts or practices in the marketing of energy services."

45. N.Y. GEN BUS. LAW § 349-d(10) provides that "any person who has been injured by reason of any violation of this section may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred

dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to ten thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."

46. Defendant knowingly and willfully misrepresented that its rates are competitive and based on market conditions and that consumers would save money by switching to Defendant from their local utilities.

47. Through the conduct described above, Defendant has engaged in deceptive acts and practices that resulted in injury to Plaintiff and the other members of the Class.

48. By reason of the foregoing, Defendant has violated N.Y. GEN. BUS. LAW §349-d, and should be enjoined from continuing to fail to disclose that its rates are substantially higher than those otherwise available by local utilities, and misrepresenting that consumers would lower their utility bills and save money by switching to Defendant. Defendant is also liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial but not less than $500.00 for each violation, such damages to be trebled, plus attorneys' fees and costs.

### COUNT III
### BREACH OF CONTRACT

49. Plaintiff and the Class incorporate by reference each preceding and each succeeding paragraph as though fully set forth herein.

50. Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Class against all Defendant.

51. Defendant's offer to Plaintiff and the Class to provide energy at a cost less than their local utility and to charge competitive rates based on market conditions constituted a

contract offer whereby Plaintiff and the Class members were solicited to sign up for energy services from Defendant in exchange for a rate based on agreed-upon factors.

52. Plaintiff and the Class members accepted Defendant's offer by signing up with Defendant, thereby creating a legally enforceable agreement between Defendant and Plaintiff and the Class members. Plaintiff and the Class members performed their obligations under the contract.

53. Defendant charged Plaintiff and the Class energy rates that were not lower than their local utilities and that were not competitive or based on market conditions.

54. Defendant's failure to charge competitive energy rates that were lower than consumers' local utilities and not based on market conditions and not competitive constituted a breach of the legally enforceable agreement between the parties.

55. As a result of Defendant's conduct, Plaintiff and the Class members have suffered an ascertainable loss in the form of direct monetary losses.

56. A causal relationship exists between Defendant's breach of contract and the Plaintiff's and the putative Class's injuries, including, but not limited to, the amount of money Plaintiff's paid over the current market rate of energy.

### COUNT IV
### UNJUST ENRICHMENT

57. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

58. Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Class against Defendant. This claim is plead in the alternative to Plaintiff's contract claims.

59. Plaintiff and Class members conferred a tangible economic benefit upon Defendant by contracting with Defendant for energy. Plaintiff and the Class members would not have contracted with Defendant for energy had they known that Defendant would charge rates substantially in excess of those charged by local utilities.

60. Failing to require Defendant to provide remuneration under these circumstances would result in Defendant being unjustly enriched at the expense of Plaintiff and the Class members.

61. Defendant's retention of the benefit conferred upon them by Plaintiff and members of the Class would be unjust and inequitable.

## COUNT V
## INJUNCTION AND/OR DECLARATORY JUDGMENT

62. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

63. Appropriate injunctive and/or declaratory relief is appropriate and necessary to remedy Defendant's wrongful conduct and to prevent the wrongful conduct from continuing. This relief should include, *inter alia*, entry of a preliminary and permanent injunction, requiring Defendant to provide appropriate curative notice to all Class members of the material information that was omitted and/or misstated, entry of a declaratory judgment that Defendant's marketing materials are materially misleading, and a Court order requiring Defendant to correct any such marketing materials going forward.

64. With respect to the Defendant's conduct going forward, Plaintiff lacks an adequate legal remedy and will suffer irreparable injury absent appropriate equitable relief.

## PRAYER FOR RELIEF

a. Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class.

b. Appoint Plaintiff as the representative of the Class and his counsel as Class counsel;

c. Award all actual, general, special, incidental, statutory, treble, punitive, and consequential damages to which Plaintiff and Class Members are entitled;

d. Award pre-judgment and post-judgment interest on such monetary relief;

e. Award injunctive relief is appropriate and necessary to remedy Defendant's wrongful conduct and to prevent the wrongful conduct from continuing; and

f. Award all other relief deemed appropriate by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

By: _____
Matthew R. Mendelsohn
David A. Mazie, Esq. (*pro hac vice* forthcoming)
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898

Joseph G. Sauder (*pro hac vice* forthcoming)
Matthew D. Schelkopf (*pro hac vice* forthcoming)
Benjamin F. Johns (*pro hac vice* forthcoming)
Joseph B. Kenney (*pro hac vice* forthcoming)
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500

*Proposed Lead Attorneys for Plaintiff and the Class*

EXHIBIT 1



10/23/2013

|ρ|·|||·ιι|||ΙΙ|ι·ιΙΙ|ѕ|ιΙ|ΙΙΙΙ|ι·|ι|ι·||ι·ρ·ΙΙι|ΙΙ|ρ|ρ·ιΙ|
*********AUTO**3-DIGIT 089
Lawrence Sasso
58 Duke St Fl 2
New Brunswick, NJ 08901-1708

Dear Lawrence Sasso,

Welcome to HIKO Energy, and congratulations on taking control of your energy prices!

Now that you're part of the HIKO family, here are some things that you can expect:

- Once your enrollment process is complete, you will see the HIKO Energy name listed on your energy bill which you will continue to receive from your local Utility. This process can take a few weeks.
- There is no change in the way you are billed. You will still receive your regular Utility bill and continue to pay the charges directly to your utility. It's that simple. Same bill, one payment – no change.
- If you have any questions about your energy delivery, meters, or have a need to report an emergency, you will continue to contact your local utility just like you always have.
- If you have any questions about the HIKO Energy *supply* portion of your bill, please call us directly at 888-264-4908, or email us at customerservice@hikoenergy.com. Our hours of operation are from 8:00am-6:30pm Monday-Friday.

Here are some of the perks and details about the rate and offer you've chosen:

- **Guaranteed Savings!** You have been enrolled onto a variable rate, which is guaranteed to be 1-7% less than your local Utility's price to compare, for the first six monthly billing cycles. After the six-month introductory rate plan, you will be automatically rolled over onto a competitive variable rate, which will be determined by HIKO Energy, based on numerous key factors, including current market conditions and climate. The variable rate can change regularly.
- **Free Month of Energy Supply!** After being with HIKO Energy for twelve monthly billing cycles, please send in any one of those twelve bills, and HIKO will send you a check for the supply portion of it!

Once again, welcome and thank you for selecting HIKO Energy. **You have chosen wisely!** We look forward to having you as a customer!

Sincerely,

*[signature]*

Elly Bernstein
Director of Operations
HIKO Energy, LLC
12 College Road, Suite 100
Monsey, NY 10952